# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**DEWAYNE LAKEITH JOSEPH**                **CASE NO. 6:17-CV-01444 SEC P**
**#579562**

**VERSUS**                                **JUDGE JUNEAU**

**DARRYL VANNOY**                         **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Pro se petitioner Dewayne Lakeith Joseph ("Joseph"), an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on November 2, 2017. Petitioner attacks his 2011 conviction for first degree murder, and the life sentence imposed thereon by the Sixteenth Judicial District Court, St. Martin Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Statement of the Case

On February 2, 2011, a jury found Joseph guilty of one count of first degree murder in the Sixteenth Judicial District Court, Parish of St. Martin, and he was subsequently sentenced to life in prison.

Petitioner filed a direct appeal in the Third Circuit Court of Appeal, alleging a sole assignment of error that the evidence adduced at trial was insufficient to sustain his first degree murder conviction. [Rec. Doc. 1-3, pp. 6-16]. On March 6, 2013, the Third Circuit affirmed the conviction. *State of Louisiana v. Joseph,* 12-466, (La. App. 3 Cir.), 129 So.3d 69; see also Rec. Doc. 1-3, pp. 17-24]. Petitioner applied for writs of certiorari in the Louisiana Supreme Court, and on October 25, 2013, his writ application was denied without comments. *State of Louisiana* v. *Joseph*, 2013-KO-0658 (La. 10/25/13), 124 So.3d 1091. He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 3, ¶9(h)]

On September 30, 2014, Joseph filed his first Application for Post Conviction Relief in the trial court, asserting that trial counsel was ineffective for failing to investigate every element of his mental health history. [Rec. Doc. 1-3, pp. 25-70]. The trial court denied his application on December 4, 2015. [Rec. Doc. 1-3, p. 72-75]. On January 12, 2015, he filed a writ application in the Third Circuit Court of Appeal, bearing Docket number KH-15-00026, which was denied on May 7, 2015. [Rec. Doc. 1-3, p. 77]. Petitioner sought supervisory and/or remedial writs in the Louisiana Supreme Court; which were denied on May 20, 2016. *State ex rel Dewayne Lakeith Joseph v. State of Louisiana*, 2016-KH-1126 (La. 5/20/16), 191 So.3d 572.

On September 30, 2015, petitioner filed a second post-conviction application in the trial court, while his first post-conviction application was pending review in the Louisiana Supreme Court.    Therein, he raised claims of counsel's ineffectiveness; specifically, that counsel failed to investigate the insanity defense and petitioner's competency to proceed to trial, that trial counsel failed to enter a dual plea of not guilty and not guilty by reason of insanity and that counsel failed to object to the court not raising his competency to proceed *sua sponte*.  On December 23, 2015, the trial court denied petitioner's second application, finding all claims procedurally barred under La. C.Cr.P. article 930.4(D), which prohibits review of a successive application which fails to raise a new or different claim.  [Rec. Doc. 1-3, pp. 123-124].  Petitioner sought writs in the Third Circuit Court of Appeal on January 27, 2016.  The Third Circuit, denying writs on May 17, 2016, relied on the trial court's findings that the first two claims were repetitive, but addressed and rejected petitioner's third claim for relief (ineffective assistance of counsel for failing to raise petitioner's mental capacity to proceed and for not objecting when the trial court failed to do so *sua sponte*) on the merits, citing *Strickland v. Washington*, because petitioner's "capacity to proceed was fully litigated prior to trial and resulted in the exclusion of the death penalty."  [Rec. Doc. 1-3, p. 126]. He sought supervisory and/or remedial writs in the Louisiana Supreme Court, which were denied on September 29, 2017. *State ex rel Dewayne Lakeith Joseph v. State*

3

*of Louisiana,* 2017-KH-1087 (La. 9/29/17), 227 So.3d 264; *see also* Rec. Doc. 1-3, p. 148. In denying petitioner's writ, the court held that he had "previously exhausted his right to state collateral review," citing their ruling on his first post-conviction application.

On November 2, 2017, Joseph filed the instant petition, which raises the following claims: (1) insufficiency of the evidence; (2) ineffective assistance of counsel due to counsel's failure to thoroughly investigate every element of petitioner's mental health history; (3) ineffective assistance of counsel due to counsel's failure to do a pre-trial investigation to discover medical records and/or interview potential expert witnesses to illustrate the extent of petitioner's mental illness; (4) ineffective assistance of counsel due to counsel's failure to enter a dual plea of not guilty and not guilty by reason of insanity; (5) ineffective assistance of counsel due to counsel's failure to object to the trial court not raising the issue of petitioner's mental incapacity to proceed *sua sponte*.[1]

---

[1] Petitioner has filed two previous Petitions for Writ of Habeas Corpus in this Court, *Joseph v. Cain*, Civil Action No. 6:15-cv-2674 and *Joseph v. Cain*, Civil Action No. 6:16-cv-0758, prior to exhausting his claims in the state court. Petitioner filed motions to voluntarily dismiss both suits which were granted, without prejudice.

4

## **Law and Analysis**

### I.    **Statute of Limitations**

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for filing applications for writs of habeas corpus by persons in custody pursuant to the judgment of a state court. This limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Federal courts may raise the one-year limitations period *sua sponte. See Kiser v. Johnson*, 163 F.3d 326 (5th Cir. 1999).

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitations period.  See 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). However, any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)).

Petitioner's conviction became final for AEDPA purposes on January 23, 2014, upon the expiration of the 90-day period for applying for certiorari with the

5

United States Supreme Court. Under 28 U.S.C. § 2244(d)(1) petitioner had one year, or until January 23, 2015, within which to file his federal habeas petition.

Petitioner's first application for post-conviction relief was filed on October 6, 2014, after 256 days accrued against §2244's one-year limit. *See* Rec. Doc. 1-3, p. 123. After moving through the Louisiana state courts, his writ application was denied by the Louisiana Supreme Court on May 20, 2016. While that application was pending, petitioner filed a second application for post-conviction relief on September 30, 2015. After moving through the Louisiana state courts, this writ application was denied by the Louisiana Supreme Court on September 29, 2017. While it was ultimately determined that this application was successive, it was properly filed and continued to toll the statute of limitations under the AEDPA. *See Mathis v. Thaler*, 616 F.3d 461, 472 (5th Cir. 2010). His petition was filed in this court on November 2, 2017, after a total of 290 days had accrued against §2244's one-year limit. Thus, this matter is timely.

**II.    Procedural Default**

The State argues that claims 3, 4 and 5 are untimely and unexhausted. For the reasons stated above, the Court finds that claims 3, 4, and 5 are timely. However, the Court does find that these claims are procedurally defaulted.

While petitioner's claims are all timely, claims three and four, that he was denied ineffective assistance of counsel for various reasons regarding his mental

6

capacity, are procedurally defaulted.  "A fundamental prerequisite to federal habeas relief under Section 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 441 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F. 3d 384, 387 (5th Cir. 1998) (*citing Rose v. Lundy,* 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F. 3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F. 3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).  In claims three and four of the instant petition, the petitioner contends that he was denied ineffective assistance of counsel for various reasons regarding his mental capacity. These claims were raised in his second application for post-conviction relief on September 30, 2015, which was deemed successive by the trial court.  The Third Circuit Court of Appeal deemed claims three and four, related to petitioner's mental health history, substance abuse, failure to enter an insanity defense and failure to present an insanity defense, successive.  While the Third Circuit did address the merits of claim five, denying on the merits petitioner's claim that his attorney was ineffective for failing to raise his mental capacity to proceed and for not objecting when the trial court failed to do so *sua sponte*, the Louisiana Supreme Court denied certiorari on claims 3, 4, and 5, based on petitioner, "… previous[ly] exhaust[ing] his right to state collateral review."

7

The state courts relied on La. Code Crim. P. Art. 930.4(D) in denying petitioner's second post-conviction application as successive because he raised the same claims in his first post-conviction application.   "The bars to repetitive claims and successive petitions found in La. Code Crim. P. Art. 930.4 are clearly independent state law procedural bases for denying review of an inappropriately raised post-conviction claim," and "the bar in Article 930.4(D) prevents further review based on the assumption that an issue was addressed in a prior proceeding and is now repetitive. . . ."  *Nicholson v. Michael*, 2006 U.S. Dist. LEXIS 55297, 2006 WL 2088306, *5, (E.D. La. June 5, 2006) (No. Civ.A. 05-6490) (emphasis in original); cf. *Graham v. Johnson*, 168 F.3d 762, 774 n. 7 (5th Cir. 1999) [*31] (citing *Felker v. Turpin*, 518 U.S. 651, 655-58 (1996) ("an application filed after a previous application was fully adjudicated on the merits is a second or successive application within the meaning of 28 U.S.C. § 2244(b)").

In this case, petitioner's first post-conviction application, which consisted of claims related to petitioner's mental health were adjudicated on the merits by the state district court. Thus, these claims were properly subject to the procedural bar set forth under La. Code Crim. P. art. 930.4(D).

### A. Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or

demonstrate that the federal court's failure to review the defaulted claims will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. This Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claim in a procedurally proper manner. In connection with his claim that counsel's ineffective assistance contributed to the default, as is further discussed in this report, that claim is without merit and does not stand as cause for the default. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to

show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (*citing Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Petitioner's claims 3-5 are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996)(habeas review precluded when petitioner neglected to allege actual prejudice and cause for failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).

### B.  Fundamental Miscarriage of Justice

Petitioner may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); accord *Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.

To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson,*

958 F.Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Petitioner does not present any claim of actual innocence and the record contains nothing to suggest or establish his actual innocence of the underlying conviction.  His claims instead address alleged procedural failings in the state criminal proceedings and ineffective assistance of counsel, not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore, has failed to overcome the procedural bar to his claims.  Claims 3-5 are procedurally barred and should be dismissed with prejudice.

### III.    Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the

state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from... [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## A. Claim 1

Petitioner argues that the evidence at trial was insufficient to support a conviction of first degree murder, rather than manslaughter. The Third Circuit, in affirming petitioner's conviction and sentence, found that the evidence was sufficient to sustain a conviction of first degree murder based on the record which indicates that petitioner drowned his wife after having time to duct-tape and chain her to a dolly, load her in a vehicle, select a dump site (the first one being too shallow) and then put her in a canal. *State of Louisiana v. Joseph,* 12-466, (La. App. 3 Cir.), 129 So.3d 69.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately

supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595,

14

598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594.  Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Petitioner states, "There is no doubt that Dewayne Joseph murdered his wife Delores Joseph...The question remains as to whether this was a case of first degree murder or manslaughter."  [Rec. Doc. 1-2, p. 6]  He argues that this question can only be answered by determining whether DeWayne knew Delores was alive or dead when he placed her body in the water.  If DeWayne believed Delores was dead, then he could not be guilty of first degree murder as there would be no kidnapping."  [Rec. Doc. 1-2, p. 6]  The Third Circuit's analysis of petitioner's case began with the same inquiry:

> The question of whether Defendant knew Mrs. Joseph was still alive before he dumped her in the water was the key issue. According to Defendant's [Pg 3] testimony at trial, he claimed that he thought she was already dead before he put her in the canal; however, the jury made an assessment of weight and credibility that was unfavorable to Defendant. Therefore, according to *Jackson*, we are not allowed to second guess the credibility determination of the trier of fact.

*State of Louisiana v. Joseph,* 12-466, (La. App. 3 Cir.), 129 So.3d at 71.

The State argued that petitioner knew the victim was still alive when he threw her in the water because he duct-taped her mouth, bound her hands behind her, and bound her feet.  During petitioner's video-recorded statement to police, the Detective asked him whether he knew the victim was still alive when he threw her in and he nodded affirmatively.  The Third Circuit's review of the DVD of his statement revealed a slight affirmative nod.  Also, the detectives testified that they took petitioner to the canal and he indicated to them that the victim was alive when he dumped her in the water.  [*See* Trial Transcript, Rec. Doc. 25-9, p. 18, lines 3-11]. Moreover, a forensic pathologist, testified that he detected no trauma which would have caused the victim's death; rather, she died from drowning.  [*Id.* at Rec. Doc. 35-10, p. 3, lines 26-29].  This credibility call should be given great weight by this Court and AEDPA deference.

In another part of his recorded statement, petitioner told the detective that the victim "was dead, knocked out. She was like [sic] (gesturing to demonstrate body stiffness)." *Joseph*, 129 So.3d at 72.  Petitioner's trial counsel seized on the first sentence as evidence that petitioner thought the victim was dead before he dumped her in the water.  *Id.*  However, the jury viewed the DVD and evidently did not believe his version of what took place.  *Id.*  This is also a credibility call and should be given great weight by this Court and AEDPA deference.

16

Finally, petitioner argues that even if he did have specific intent to commit the offense, it was mitigated by "heat of blood" such that the conviction should be reduced to manslaughter. *Id.* However, the Third Circuit found that the record indicated that petitioner drowned his wife *after* having time to duct-tape and chain her to a dolly, load her in a vehicle, select a dump site (the first one being too shallow), and then put her in a canal. *Id.* The appellate court found that the murder was committed in cold blood, however "heated" the initial altercation may have been, and not in the heat of the moment or in the heat of passion. Again, this is also a credibility call and should be given great weight by this Court and AEDPA deference.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that petitioner had specific intent to commit first degree murder. The jury was well within its authority to make credibility determinations as to the testimony of the witnesses. It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that the essential elements of first degree murder were proven beyond a reasonable doubt. Petitioner is not entitled to relief on this claim.

## B. Claim 2

The petitioner alleges four separate grounds of ineffective assistance of counsel: failure to investigate his mental history, failure to do a pre-trial investigation to discover medical records and/or interview potential expert witnesses to illustrate the extent of the petitioner's mental illness, failure to enter a dual plea of not guilty and not guilty by reason of insanity; and failure to object to trial court not raising the issue of the petitioner's mental capacity to proceed *sua sponte*. This Court has determined that claims 3-5 are procedurally defaulted; however, as all claims of ineffective assistance of counsel are related and/or repetitive, the findings can also be extended to all claims.

The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984) provided for a two-prong analysis in reviewing claims of ineffective assistance of counsel. First, it must be shown that counsel's performance was deficient. Counsel's performance is deficient if it falls below an objective standard of reasonableness. A court of appeals review of counsel's performance is highly deferential, with a strong presumption that the performance was reasonable. Deficient performance is prejudicial only upon a showing that "but for" counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined. *United States v. Faubion*, 19 F.3d 226 (5th Cir. 1994). To prove counsel's performance was

deficient requires a showing that counsel made errors so serious that the Defendant was effectively denied the right to counsel as guaranteed by the Sixth Amendment. *State v. Moody*, 2000-0886 (La. App. 1st Cir. 12/22/00), 779 So.2d 4 (*citing State v. Serigny*, 610 so.2d 857 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993)).  Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during the trial rests with the accused and his attorney.  *State v. Felde*¸ 422 So.2d 370, 393 (La. 1982), *cert. denied*, 461 U.S. 918 (1983).  The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel.  *State v. Folse,* 623 So.2d 59 (La. App. 1 Cir. 1993).

The trial court, when addressing petitioner's claims, held that his attempt to attack his trial counsel's strategy and tactical decisions made during the trial are not grounds for a claim of ineffective assistance of counsel.  [Rec. Doc. 35-16, p. 57] Decisions relating to investigation, preparation, and strategy require an evidentiary hearing, and therefore, cannot possibly be reviewed on appeal.  *State v. Bias*, 2014-1588, 167 So.3d 1012 (La. App. 1 Cir. 2015)(*citing State v. Allen*, 94-1941 (La. App. 1 Cir. 11/9/95), 664 So. 2d 1264, 1271, writ denied, 95-2946 (La. 3/15/96), 669 So. 2d 433.)   Additionally, the presentation of evidence was a strategic decision, and whether or not to present evidence of the defendant's insanity at the time of the offense was likewise a strategic decision. Defense counsel decided not to pursue that

defense and thus, evidence of insanity at the time of the offense was not admissible. *Id. (citing* See La. C.Cr.P. art. 651.)

The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. *State v. Felde, supra.* And as opinions may vary on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful. *State v. Brooks*, 505 So.2d 714 (La. 1987), cert *denied, Brooks v. Louisiana*, 484 U.S. 947, 108 S. Ct. 337, 98 L.Ed.2d 363. In this matter, the petitioner cannot say that "but for" counsel's errors, if any, the end result would have been different.

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786. To obtain relief, a petitioner

must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 786- 87. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. at 788.

The record reflects that the petitioner's trial counsel did, in fact, investigate his mental history prior to trial. There was an extensive psychological examination and IQ test conducted on the petitioner prior to trial by doctors for the State and defense. [*See* Reasons for Judgment on Petitioner's First Application for Post-Conviction Relief, Rec. Doc. 35-16, p. 1181]. In fact, the initial psychological testing was requested by the petitioner's trial attorney. Both the State and the defense were in possession of all the petitioner's medical, educational, and institutional records for at least a full year prior to trial, as evidenced by the January 7, 2010 minute entry. *Id*. In the July 30, 2010 status conference, the State informed the court that all the experts agreed that the petitioner had a mental retardation and would not seek the death penalty. *Id.; see also* July 30, 2010 status conference minutes, Rec. Doc. 35-19, p. 7.

In *Hines v. Louisiana*, 102 F.Supp.2d 690, 699 (E.D. La., Feb. 18, 2000), ineffective assistance to properly investigate was explained, as follows:

> In order to establish counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from the investigation, and how such would have altered the case.

This Court agrees with the Respondent's argument that this has not happened here.

Likewise, the Court also agrees that there is no evidence of insanity, or that "but/for" the dual plea, the outcome would have been different. As such, the petitioner's ineffective assistance claims have no merit.

### Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation**

**within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 7th day of February, 2019.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**